MARSHALL MEDICINE COMPANY, Respondent, v. THE CHICAGO & ALTON RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, June 3, 1907.**

1. COMMON CARRIERS: Contract: Shipper's Knowledge: Connecting Carrier. The fact that the shipper knew that the carrier would only carry the goods to the end of its line and then deliver to the connecting carrier, does not support the contention that the contract was to ship only that far when the waybill showed they were to be shipped to their destination in a different State.

2. ———: ———: Statute: Decision. Prior to the exactment of section 5222, Revised Statutes, 1899, a carrier could be bound by contract, express or implied, but not otherwise to transport persons or property beyond the line of its own road; and such rule seems to have been followed in several cases since the enactment of the statute, but no reference was made to the statute.

3. ———: ———: ———: Receipt of Goods. Since the enactment of the statute the receipt of goods by the carrier to be transported beyond its own line in the absence of the stipulation limiting its liability to a loss or damage on its own route, created the liability for the loss or damage on the route of its connecting carriers; and a provision in the bill of lading prohibiting the shipper's agent from making such contract is a nullity.

4. ———: Loss: Measure of Damages: Evidence. The measure of damage for goods lost in shipment is the value of the goods at their destination; but where such evidence is impossible, the evidence of the value at the shipping point is admissible.

5. ———: ———: Agency: Letter. A certain letter written by the plaintiff to an alleged agent who converted its goods is held to be hearsay; but if it proved anything it was in favor of the appellant and therefore cannot vitiate the judgment.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* and *Chas. M. Miller* for appellant.

(1) The shipment was not a through shipment to Preacher, Virginia, but to St. Louis only. McCann v. Eddy, 133 Mo. 68; Nenno v. Railway, 105 Mo. App. 549. (2) No authority was shown in the station agent to execute a bill of lading for a through shipment to Preacher, Virginia. Smith v. Railway, 112 Mo. App. 615; Sewing Machine Co. v. Railway, 70 Mo. 678; Minter Bros. v. Railway, 56 Mo. App. 282; Faulkner v. Railway, 99 Mo. App. 424. (3) Plaintiff failed to prove any damages. Blackmer v. Railway, 101 Mo. App. 557. (4) Incompetent evidence admitted. Grain Co. v. Railway, 96 S. W. Rep. 681, and cases cited.

*Karnes, New & Krauthoff* and *John N. Davis* for respondent.

(1) Appellant's contention that the shipment in question was not a through shipment to Preacher, Virginia, but to St. Louis only is not supported by the law or the evidence. Grain Co. v. Railroad, 176 Mo. 480; Sash & Door Company v. Railroad, 177 Mo. 641; R. S. 1899, sec. 5222; McLendon v. Railroad, 119 Mo. App. 128; Buffington & Lee v. Railroad, 118 Mo. App. 480; Ingwersen v. Railroad, 116 Mo. App. 152; Nenno v.

Railroad, 105 Mo. App. 540. (2) Appellant's allegation of error for want of authority shown in the station agent to issue bill of lading is not well taken. In the first place the bill of lading was admitted in evidence without formal proof and the understanding of the trial court as well as respondent's attorney was that the bill of lading was admitted for all purposes. (3) Appellant alleges that there was not sufficient evidence to prove the damage in this case, namely, sixty-three dollars. Appellant has quoted sufficient of the record in his brief under this head to show that the damage was fully proven. Jennings v. Sparkman, 48 Mo. App. 246. (4) Appellant alleges that there was reversible error committed in the trial court by admitting in evidence letterpress copy of letter written November 28, 1902, to M. E. Robinette, at Block, Virginia. In reply to this will say that the letter was properly admitted in evidence, inasmuch as the railroad company's attorneys in the taking of the deposition of J. W. Guntner demanded that a copy of this letter be produced.

BROADDUS, P. J.—The plaintiff's suit is to recover the value of certain goods shipped over defendant's railroad, which it is alleged were not delivered to the consignees and were not returned to plaintiff. The bill of lading shows that the goods, consisting of two barrels of medicine and two boxes of medicine, were received by defendant as a common carrier on the thirteenth day of October, 1902, to be transported and delivered to Brooks & Fuller, Preacher, Virginia. The goods were carried by defendant to St. Louis, Missouri, where it delivered them to its connecting carrier, the Louisville & Nashville Railroad Co., which carried them to Preacher, Virginia. The consignees, Brooks & Fuller, refused to receive them. Afterwards they were delivered to one, Robinette, who claimed to be plaintiff's

agent and who sold them and converted the proceeds to his own use. The plaintiff denied that Robinette was its agent in relation to the goods. The finding and judgment were for plaintiff, from which defendant appealed.

The contention of the defendant is that it is not liable for the default of its connecting carrier. This seems to be the controlling question in the case, as the question of Robinette's agency was settled in favor of plaintiff by the verdict of the jury. A reference to the testimony shows that plaintiff knew at the time of the shipment of the goods that Preacher, their destination, was not a station on defendant's road and that they would necessarily be transported by a connecting carrier from the end of plaintiff's line at St. Louis the remaining distance. There was a clause in the conditions annexed to the bill of lading to the following effect, "No agent of the company is authorized to contract for transportation of any freight beyond the stations on its line, or make any contract for transportation of freight within any special time." The defendant insists that the shipment of the goods over its line was only to St. Louis and was so understood by plaintiff. The fact that plaintiff knew that the goods would only be carried over defendant's line to that city and then delivered to a connecting carrier, does not support defendant's contention, and there is no other fact in evidence affecting the question.

The defendant's chief defense is, that its station agent had no authority to execute the bill of lading for a through shipment to a point beyond its line of railroad. A clause in the bill of lading forbade his making such a contract. In the absence of such a provision, prior to the enactment of section 5222, Revised Statutes 1899, the law was, that a common carrier may be bound by contract, express or implied, but not otherwise, to transport persons or property beyond the

line of its own road. [Grover & Baker Sewing Machine Co. v. Railway, 70 Mo. 672.] And it seems that this rule has been applied in a number of cases since said enactment, viz.: Patterson v. Railroad, 47 Mo. App. 570; Turner v. Railroad, 20 Mo. App. 632; Crouch v. Railroad, 42 Mo. App. 248; White v. Railroad, 19 Mo. App. l. c. 410; Orr v. Railroad, 21 Mo. App. 336; Faulkner v. Railway, 99 Mo. App. 421. In the last case cited, it was held that, "when the shipper shows a written contract for carriage beyond the end of the road he should show the authority of the agent to make such contract." It is strange, but true, that no reference whatever is made to said section in any of said cases.

The section was afterwards construed in Dimmitt v. Railway, 103 Mo. 442, wherein the court used the following language: "The consideration given by the Supreme Court to this question, and the conclusion reached by it so recently before this enactment, when taken in connection with the terms employed in the statute itself, leaves little room for doubt that the purpose of the Legislature was to prescribe a definite rule of liability for negligence of a common carrier in harmony with what has been denominated 'the English rule' upon the subject. Whereby such carrier, when he receives a parcel to be transported to a place beyond the terminus of his route, is to be held liable as such to the place of destination, in the absence of a specific contract to carry such parcel only to the terminus of his own route, or limiting his liability to loss or damage occurring on his own route. The enactment as thus construed becomes a rule of evidence by which to determine what the contract of the carrier is in the absence of a specific one in a given case, operates with no undue hardship upon the carrier, and is violative of none of his rights, constitutional or otherwise. By its provisions the act of acceptance by a common carrier of property to be transferred to a place be-

yond the terminus of its route is evidence of a contract to carry such property to the place of its destination. The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such carrier to carry such property to the place of its destination. This prima-facie case the statute makes for the plaintiff on the facts stated. In order to defeat it, the defendant must show, that by specific agreement it only contracted to carry the property to the terminus of its own line, or, what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line." The question again came up in Nines v. Railway, 107 Mo. 475, wherein the court in specific language approved of the holding in the Dimmitt case; and again, in Western Sash & Door Co. v. Railway, 177 Mo. 641, in which the court approves its two former decisions.

Under these late decisions, the receipt of the goods by the defendant to be transported to a place beyond its own line of road, in the absence of a stipulation limiting its liability to loss or damage occurring on its own route, created a liability for any such loss or damage on the route of its connecting carriers. The provision in the bill of lading prohibiting defendant's agent from contracting for delivery of goods beyond its own route was a nullity. He was bound to receive the goods for transportation, but he had the right to limit his company's liability, but, having failed to do so, the statute makes the shipment a contract for carriage for the entire route, or is evidence of such a contract which is the equivalent.

One of defendant's contentions is, that plaintiff failed to prove its damages. The witness for plaintiff fixed the value of the goods at the place of shipment less the costs of carriage. The measure of damages in cases of this character is the value of the goods at their

destination.    [Farwell v. Price, 30 Mo. 587; Rice v. Railroad, 3 Mo. App. 27; Blackmer v. Railway, 101 Mo. App. 557; Railroad v. Traube, 59 Mo. 355; Commission Co. v. Railroad, 80 Mo. App. 164.]    While such is the general rule there are exceptions.    [Lachmer Bros. v. Express Co., 72 Mo. App. 13; Ross v. Railroad, 119 Mo. App. 290.]    In the latter case it was held: "The measure of  damages is the value of the goods at their destination, but where such evidence is impossible, evidence of the value at the shipping point is admissible." The facts were in that case that the goods were lost during transportation; it was therefore impossible to show their value at the place of destination.    The circumstances of this case are similar on principle.    The goods were refused by the consignees and afterwards delivered to a wrong party.    It would be difficult under this state of facts for plaintiff to have proved their value at the place of destination.    They were practically in a condition similar to goods lost in transportation.    Furthermore, the evidence was introduced without objection on  the part of defendant.    It was relevant evidence. [Echols v. Railroad, 90 Ala. 366.]    It is there held that where goods were lost at the point of shipment or the place at which they were received, evidence of their value at the point of shipment was relevant and admissible to show their value at the point of destination.

A letter written by plaintiff to Robinette was introduced in evidence over the objections of defendant. It was a mere hearsay statement of plaintiff and should not have been admitted.    Judging from defendant's argument the purpose of its introduction was to show that Robinette was not plaintiff's agent.    But it does not show, nor tend to show, such fact.    It could not have affected the mind of the court sitting as a jury in any manner whatever.    However, defendant, notwithstanding its objection to the evidence, insists that it does in fact tend to show that Robinette was authorized to re-

ceive the goods at their point of destination. If such was the effect of the letter, we do not think defendant ought to complain, as he was benefited and not injured by its introduction as evidence.

For the reasons given, the cause is affirmed. All concur.