(Decided March 31st, 1897.)

# HOFFMAN & THOMAS *vs.* THE CUMBERLAND VALLEY RAILROAD COMPANY.

*Connecting Carriers—First Carrier Not Liable for Losses on Line of
a Connecting Carrier Without a Special Contract—Authority of
Local Station Agent to Make Such Contract.*

When goods are received by a common carrier for transportation to a
point beyond its own line, such initial carrier is liable only for losses
and delays on its own route and for safe delivery to the next carrier,
unless there be a special contract by which the first carrier agrees to
be liable for due delivery beyond its own line.

Such special contract will not be implied from the mere acceptance of
goods directed to a point beyond the line of the first carrier's road.

The local station agent of a railway company has no power as such to
make a special contract with a shipper by which the company is
rendered liable for the due transportation of goods on the line of a
connecting carrier.

But such a contract made by a local station agent will be binding
upon the company if authority to make it has been expressly con-
ferred upon him, or if he has been held out as having such authority.

In this case it was *held* that even if the defendant's station agent at H.
did specially contract to deliver goods beyond the line of defend-
ant's road within a certain time, yet since it was shown that he had
no authority to make such contract, and it was not shown that the
defendant had held him out as having such authority, the defendant
is not liable for delays in transportation occurring on the line of a
connecting carrier.

Appeal from a judgment of the Circuit Court for Washington County (STAKE, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*W. H. A. Hamilton* and *M. L. Keedy* (with whom were *Ernest Hoffman* and *Buchanan Schley* on the brief), for the appellants.

*J. Clarence Lane* and *Geo. W. Smith, Jr.*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action brought in the Circuit Court for Washington County by the appellants, Hoffman and Thomas, against the appellee, The Cumberland Valley Railroad Company, to recover damages caused by delay in the transportation of seven carloads of peaches shipped at Hagerstown, Md., in September, 1895, and directed to the consignees in New York. The line of the defendant's road ends at Harrisburg, in the State of Pennsylvania, and at that place in the usual course of business freight for New York is delivered to the Pa. R. R. Co., a connecting carrier. The delay complained of in this case occurred on the road of the connecting carrier, and the question is whether under the facts as disclosed by the record before us the defendant is liable for such delay.

The law in regard to the liability of an initial carrier of goods for losses or delays occurring on the line of a connecting carrier to which it has safely delivered the goods in the course of transportation has been settled in this State by the cases of *B. & O. R. R. Co.* v. *Green*, 25 Md. 72, and *B. & O. R. R. Co.* v. *Schumaker*, 29 Md. 168. It is that the first carrier is only liable to the extent of its own route and for safe delivery to the next carrier in the absence of an express and special contract increasing the liability and causing it to cover losses that may happen upon

the lines of connecting carriers. And in *Elliott on Rail-roads*, sec. 1435, it is said : " The majority of our Courts have held in accordance with what is called the American rule, that the mere acceptance of goods directed to a point off the carrier's line is not a sufficient basis for the implication of a contract for extra terminal liablity, and that in the absence of an express contract, or of more significant facts or specification than the fact of acceptance as the basis of an implied contract, the initial carrier is discharged by carrying safely to the end of its line, and there delivering to the next carrier."

In the case now under consideration the plaintiffs rely upon a special agreement by the defendant to deliver the goods shipped in New York or Jersey City at a specified time over the route of a connecting carrier. The proof on the subject is as follows : One of the plaintiffs testified that he had been shipping peaches from Hagerstown by refrigerator cars, when Long, the local station agent of the defendant, said to him that. " it was not worth while to ship by refrigerator cars ; why not try ventilated cars, they would get there (New York) the same as by express, hooked on to passenger trains ; rate to be 63 cents shipped by fast freight, and they would get to New York about seven o'clock in the morning." The other plaintiff testified that Long said, " if I shipped by fast freight I was always sure of the peaches getting there on time." The only other evidence offered by the plaintiffs as to the alleged agreement was the testimony of the witness Boss, who said that shortly before the shipments were made, Long, the agent, had said : " We made a contract with Mr. Hoffman for fast freight and by passenger service from Harrisburg to New York, hitched to a passenger train behind the express car ; that they would get there about 7 A. M., leaving here at something after 9 at night." It was further shown on the part of the plaintiffs that all of their cars except one arrived in Jersey City several hours behind time, and that the peaches were then to some extent damaged. The

freight for the entire route was paid by the consignees in New York. The testimony of Long, the station agent, was that he informed the plaintiff, Hoffman, that his shipments would have to leave Hagerstown on the 12.10 noon train which was due to arrive in Jersey City at 3 o'clock the following morning; that when, before the shipments began, he was informed that Hoffman had stated to Boss that he could ship by the night train, and that the cars would arrive in Jersey City the next morning, the witness immediately sought out Hoffman and told him that could not be done, and that no cars could be forwarded by the fast freight except on the noon train, and that the plaintiff afterwards said he could not get them ready for that train. The superintendent of the defendant company testified that the noon train from Hagerstown was the only one by which Long was authorized to send freight east by fast time, that all the freight sued for in this case was carried by defendant over its road from Hagerstown to Harrisburg and delivered on time to the Pa. R. R. Co. in good condition at Harrisburg. There was other evidence on the part of both plaintiffs and defendant, all of which has been carefully considered by us. We do not, however, deem it necessary in the view we take of this case, to decide whether the evidence was legally sufficient to establish the contract relied on or not.

In *Myrick* v. *Mich. Central R. R. Co.*, 107 U. S. 107, it was held: " Each road confining itself to its common law liability is only bound in the absence of a special contract to safely carry over its own route and safely to deliver to the next connecting carrier, but any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language but only from clear and satisfactory evidence."

But assuming that Long, the agent, did make the contract relied on by the appellants, he clearly had no authority

or power from the evidence, as disclosed by the record, to bind the appellee company.    A local railroad station agent has no power to make a special agreement extending the liability of his company beyond its own line, unless it has been expressly conferred upon him or may be implied from the course of business.    *Grover & Baker Co.* v. *Mo. Pac. R. Co.*, 70 Mo. 672 ; *Burroughs* v. *Norwich and Worcester Railroad Company*, 100 Mass. 26 ; 1 *Wood on Railroads*, 508.    In *Elliott on Railroads*, sec. 1437, it is said : " The Courts following the English rule announced in *Muschamp's case*, 8 M. & W. 421, hold that an agent's authority to receive goods for carriage implies authority to contract for extra-terminal liability while others deny the implication. Although a general freight agent may have this power, we think, the better rule is that a local station agent has no such implied authority, unless he has in some manner been held out as having it."

There is no evidence in this case that any such authority was given the agent, nor that he was held out to the world as having such authority.    On the contrary the positive testimony of Long, the agent, and of Boyd, the superintendent, is, that he had no such authority.    It therefore follows that the Court below properly instructed the jury that the plaintiffs had offered no evidence legally sufficient to entitle them to recover.

It is not therefore necessary for us to pass upon the questions raised by the other prayers in the case.

*Judgment affirmed with costs.*

(Decided March 31st, 1897).